IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MOHAMMED F. NASAR,

    Plaintiff,

v.                                                          No. 1:18-cv-01212-JDB-jay

KOHL'S DEPARTMENT STORES, INC.,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

*INTRODUCTION*

This action was initially brought in the Circuit Court of Madison County, Tennessee, on September 4, 2018, by the Plaintiff, Mohammed F. Nasar,[1] against the Defendant, Kohl's Department Stores, Inc. ("Kohl's"), (Docket Entry ("D.E.") 1-2) and removed to this Court on October 26, 2018, in accordance with 28 U.S.C. § 1441 (D.E. 1). Before the Court is the Defendant's August 27, 2019, motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 27.) Plaintiff responded to the motion on September 17, 2019. (D.E. 28.) However, in an order entered September 19, 2019, the Court struck the response from the docket in light of Nasar's failure to comply with the local rules of this district or the Federal Rules of Civil Procedure, and for his failure to adequately address the issues raised in Kohl's dispositive motion. (D.E. 30.) A second filing was made by Plaintiff in response to the motion on October 7, 2019. (D.E. 34-35.)

---

[1]There seems to be some confusion concerning the correct spelling of Plaintiff's name. Herein, the Court will utilize the spelling reflected on the docket, which was obtained from the complaint.

1

*UNDISPUTED FACTS*

The following facts are undisputed. The Plaintiff visited the Kohl's store located at 1131 Vann Drive in Jackson, Tennessee, several times per year. According to copies of documents attached to Plaintiff's deposition, on September 4, 2017, at 7:34 p.m., Nasar purchased three pairs of men's Dockers brand pants for a total purchase price, including tax, of $54.88. (D.E. 27-2 at PageID 89.) The purchase was made with a Visa card. (*Id.*) Later that evening, at 7:59 p.m., he returned a pair of pants, for which he received merchandise credit in the amount of $21.95. (*Id.* at PageID 90.) The return receipt identified the clothing as "Mens Haggar Suit" and noted the return was "WITHOUT RECEIPT." (*Id.*) Kohl's submits, and Nasar does not appear to dispute, that these pants bore a "Haggar tag." (D.E. 27-1 at PageID 73.) A second return receipt, timestamped moments later at 8:06 p.m., reflected the return of a pair of pants, also identified as "Mens Haggar Suit," "WITHOUT RECEIPT." (D.E. 27-2 at PageID 88.) Plaintiff was given store credit in the amount of $21.95 for this return. (*Id.*) Nasar appears to not dispute that these pants bore a "Haggar tag." An Electronic Journal Report timestamped 8:08 p.m. on September 4, 2017, indicates that Nasar purchased a pair of "Mens Dress Pants" for $32.91, including tax. (*Id.* at PageID 89.) He paid for the item with $21.95 of his store credit and put the remainder on the same Visa card used to make the first September 4 purchase. (*Id.*) The 8:08 p.m. purchase involved men's size 40x32 Croft and Barrow True Comfort 4-way stretch classic-fit pleated dress slacks in charcoal heather.

The following day, at 3:18 p.m., Plaintiff returned two pairs of Dockers brand pants to the store. (*Id.* at PageID 91.) It appears that he presented a purchase receipt for the items and a refund in the amount of $36.59 was credited to his Visa card.

On September 12, 2017, Nasar attempted to return a pair of pants bearing a Croft and Barrow tag on two separate occasions. The Defendant claims, and the Plaintiff does not dispute,

that the sewn-in label of the pants did not match the Croft and Barrow tag. Kohl's refused to accept the return. Kohl's manager Paul Sanford spoke to him at some point during this attempted return. When Nasar returned to the store later in the day to again attempt to return the pants, an employee advised him that a supervisor wanted to speak with him. Plaintiff, who was familiar with the supervisor, walked with him to an office, and the supervisor closed the door behind him. They were joined by a second employee shortly thereafter. Neither touched Nasar. The police were called, and officers issued a written warning citation to Plaintiff for theft, shoplifting, and trespassing but did not place him under arrest. (*Id.*) The citation indicated that Kohl's did not wish to press charges. (*Id.*)

Although not a model of clarity, it appears the complaint alleges false arrest and imprisonment, and intentional and negligent infliction of emotional distress.[2]

*STANDARD OF REVIEW*

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party must first demonstrate to the court that an essential element of the nonmoving party's case is absent; upon that showing, the nonmoving party must then present sufficient evidence to demonstrate that there is a factual controversy as to that element, or at least explain why such evidence is not available." *Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 326 (6th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). While "all reasonable inferences [must be made] in favor of the non[]moving party, . . . the mere existence of a scintilla of evidence in support of the

---

[2]Plaintiff also averred malicious prosecution. This claim was dismissed with prejudice pursuant to a stipulation entered February 4, 2019. (D.E. 14.)

3

plaintiff's position will be insufficient to defeat summary judgment." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)) (internal alterations & quotation marks omitted). A plaintiff "cannot rely on conjecture or conclusory accusations to survive summary judgment." *Guba v. Huron Cty., Ohio*, 695 F. App'x 98, 105 (6th Cir. 2017) (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008)) (internal quotation marks omitted).

To the extent a nonmovant fails to respond to an argument of the moving party, the court "may not grant summary judgment on that fact alone." *Alhomedi v. Dillard's, Inc.*, No. 14-cv-2434-SHL-cgc, 2015 WL 10818743, at *3 (W.D. Tenn. Oct. 22, 2015). Rather, "a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).

## *JURISDICTION AND CHOICE OF LAW*

The Plaintiff is a resident of Tennessee, Kohl's is a Wisconsin corporation, and the amount in controversy exceeds $75,000. Accordingly, this Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332. In diversity cases, a federal district court is to apply the substantive law of the state in which it sits. *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 570 (6th Cir. 2016) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). This rule includes the forum state's law concerning choice of laws. *Id.* In tort cases, "Tennessee follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws to choice-of-law questions." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)); *Bass v. Kodirov*, Nos. 1:17-CV-108 REEVES/STEGER, 1:17-CV-69 REEVES/STEGER, 2019 WL 4601992, at *3 (E.D. Tenn. Sept. 23, 2019). That is, "the law of the state where the injury occurred will be applied unless some other state has a more

significant relationship to the litigation." *Montgomery*, 580 F.3d at 459 (quoting *Hataway*, 830 S.W.2d at 59). Here, the alleged injury occurred in Tennessee and the parties do not claim any other state's law applies. Thus, the Court will look to the law of Tennessee in resolving this action.

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

<u>Intentional Infliction of Emotional Distress.</u>

To establish intentional infliction of emotional distress in Tennessee, a plaintiff must show "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). The standard for outrageousness is a high one; "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Odom v. Claiborne Cty., Tenn.*, 498 S.W.3d 882, 887 (Tenn. Ct. App. 2016) (quoting Restatement (Second) of Torts § 46 cmt. d), *appeal denied* (Aug. 18, 2016); *see also Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012) ("A plaintiff's burden to demonstrate outrageous conduct is not an easy burden to meet.").

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Brown*, 393 S.W.3d at 704 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622-23 (Tenn. 1997)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Id.*

In his brief, Plaintiff points to nothing specific about the conduct of Kohl's employees that he claims was "outrageous" other than the fact of the theft accusation itself. In his deposition,[3] Nasar charged that the employees told police he was a "thief," a "thug," and a "dangerous" person, and that he had come to steal from the store. (D.E. 27-2 at PageID 78.) Tennessee caselaw indicates that such actions do not meet the outrageousness standard. *See Goldfarb v. Baker,* 547 S.W.2d 567, 568-69 (Tenn. 1977) (professor's mistaken accusation that a student threw a pie at him, leading him to forbid the student to attend class, have the student ejected from the building when he tried to take his seat, and claim in front of others that the student was attempting to blackmail him, did not meet the outrageousness standard); *Odom*, 498 S.W.3d at 883-84, 886-87 (district attorney's statements that a woman involved in a custody dispute was a "jerk," a "troublemaker," and a "bitch" were derogatory and inappropriate but not "outrageous"); *Brown*, 393 S.W.3d at 704 (a shopkeeper's accusation that a customer was attempting a "money switch" and threat to call the police constituted a "triviality" the law does not protect); *Richards v. O'Connor Mgmt., Inc.*, No. 01A01-9708-CV-00379, 1998 WL 151392, at *1-3 (Tenn. Ct. App. Apr. 3, 1998) (mall management company whose security officers, in responding to mall alert for customer who inadvertently left store with gift certificate and merchandise due to employee error, screamed at customer when she returned to the mall to rectify the situation, demanded to look in her purse, detained her in a different store, escorted her to other stores in the mall "like she was under arrest for something," and may at one point have placed a hand on a sidearm when interviewing her had not engaged in "outrageous" conduct). Actions that hurt one's feelings, or

---

[3] Only excerpts of the deposition were attached as exhibits to Defendant's motion. While additional portions thereof were appended to Plaintiff's September 17 response, none were included with the response upon refiling. Regretfully, as the deposition pages which were part of Plaintiff's initial submission are no longer before the Court, they cannot be considered.

one's pride, simply are not sufficient to warrant legal intervention.[4] *See Odom*, 498 S.W.3d at 887 ("There is no occasion for the law to intervene in every case where some one's feelings are hurt."). The intentional infliction of emotional distress claim is DISMISSED.

Negligent Infliction of Emotional Distress.

To set forth a claim for negligent infliction of emotional distress under Tennessee law, a plaintiff must "establish the elements of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation." *Finley v. Kelly*, 384 F. Supp. 3d 898, 914 (M.D. Tenn. 2019) (quoting *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004)). A plaintiff must demonstrate "a 'serious' or 'severe' emotional injury, which is one that occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* (quoting *Marla H. v. Knox Cty.*, 361 S.W.3d 518, 529 (Tenn. Ct. App. 2011)) (some internal quotation marks omitted). As the Tennessee Court of Appeals articulated in *Brown*,

> in the elements that must be established for a claim of negligent infliction of emotional distress, the requirement that the stimulus conduct be extreme and outrageous is interwoven with the "reasonable person" component of the element of serious or severe emotional injury. In effect, the plaintiff must prove that the conduct giving rise to his claim was so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury.

*Brown*, 393 S.W.3d at 706; *see also Finley*, 384 F. Supp. 3d at 915-16 (same).

For the reasons articulated with respect to Nasar's intentional infliction of emotional distress claim, nothing has been shown that rises to the level of outrageousness. In addition, while

---

[4] Plaintiff suggests in his responsive brief that, because he was a leader of his mosque, he was reasonable in his belief that the actions of Defendant's employees were intentional. In his deposition, Nasar claimed store employees "knew" him because he frequented the location and spent "a lot of money." (D.E. 27-2 at PageID 78-79.) Even if certain personnel may have recognized Plaintiff as a regular customer, he has pointed to no evidence in the record that any Kohl's employee was aware of his religious affiliation.

Plaintiff testified in his deposition that he was emotionally affected by the incident, no additional testimony or evidence elaborating on this claim, beyond the bald assertion, is before the Court. Thus, the Court cannot determine based on the record that any emotional injury suffered by Nasar was serious or severe. This claim is also DISMISSED.

False Arrest and Imprisonment.

A successful claim of false arrest and imprisonment in Tennessee requires that the plaintiff establish "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013) (quoting *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990)). Such a showing "requires that the defendant must have acted without probable cause." *Id.* "Probable cause exists when at the time of the [detention], the facts and circumstances within the knowledge of the [defendant], and for which [it] had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the [detained person] had committed or was committing an offense." *State v. Clayton*, 535 S.W.3d 829, 849 (Tenn. 2017) (internal quotation marks omitted).

Kohl's argues that the undisputed facts of this case mandate a finding of probable cause as a matter of law.[5] In support of its position, Kohl's has proffered the affidavit of Rodolfo Padron, its regional loss prevention director. Therein, Padron stated that, on September 9, 2017, the store's loss prevention personnel investigated Nasar's September 4 return of Haggar-tagged pants and determined that the Haggar brand tag had been stapled to the pants and that the sewn-in label bore the brand name Perry Ellis, which Kohl's does not sell. (*See* D.E. 27-3 ¶¶ 16-17.) He further

---

[5]Defendant also invokes Tennessee's Shopkeeper's Privilege, codified at Tennessee Code Annotated § 40-7-116(c). The Court finds it unnecessary, under the circumstances, to engage in an analysis of the facts of this case under that statute.

averred that the Croft and Barrow-tagged pants Plaintiff attempted to return on September 12, 2017, had a sewn-in label that did not match the tag. (*See id.* ¶ 18.)

The Plaintiff challenges the affidavit on the grounds that it is self-serving, that he had no opportunity to cross-examine or depose Padron, and that the affidavit was invalid because the affiant was not one of the individuals who arrested and detained him. None of these reasons convince the Court to disregard the affidavit. The mere self-serving nature of evidence does not prohibit the courts from considering that proof. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it."). While Plaintiff complains that the affidavit should not be considered because he did not have an opportunity to depose and, in the course of which, cross-examine Padron, he fails to claim that he ever attempted to take his deposition. The fact that the affiant was not present at Nasar's arrest and/or detention is irrelevant, as the purpose for which the affidavit has been presented by the Defendant deals with the reason for the arrest and/or detention, namely, the discrepancy between the tags and labels on the pants Plaintiff attempted to return to the store.

The Federal Rules of Civil Procedure require that "[a]n affidavit . . . used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Padron stated in his affidavit that he had personal knowledge of the facts. (*See* D.E. 27-3 ¶ 2.) Nasar has made no showing that the facts set out in the affidavit are inadmissible or that the affiant is not competent to testify. Accordingly, the Court will consider the affidavit.

In his responsive brief, Plaintiff insists that Kohl's lacked probable cause to detain him because he presented valid receipts for the items he attempted to return. This assertion is belied

by his responses to Kohl's statement of undisputed facts (the "SOUF"). SOUF 6 referenced Exhibit B to Padron's affidavit, the Kohl's return receipt stamped September 4, 2017, at 7:59 p.m. reflecting the return of "Mens Haggar Suit" "WITHOUT RECEIPT." (D.E. 27-1 at PageID 73, D.E. 27-4 at PageID 96.) SOUF 6 stated that "Exhibit B evidences that Plaintiff returned, without a receipt, a pair of pants with a Haggar tag." (D.E. 27-1 at PageID 73.) In response, Plaintiff stated as follows:

> Plaintiff admits that Exhibit B is evidence that Plaintiff was returning a pair of the pants that he purchased from the Defendant store. This is a disputed fact, and Plaintiff asserts that he purchased the trousers from the Defendant Store. Further, that the Defendants have offered no proof indicating that they were not purchased from that store.

(D.E. 35 at PageID 145.)

Similarly, SOUF 8 pointed to Exhibit C to Padron's affidavit, the return receipt stamped September 4, 2017, at 8:06 p.m. indicating the return of "Mens Haggar Suit" "WITHOUT RECEIPT." (D.E. 27-1 at PageID 73, D.E. 27-4 at PageID 97.) The SOUF stated that the return receipt "evidences that Plaintiff returned, without a receipt, a second pair of pants with a Haggar tag." (D.E. 27-1 at PageID 73.) Nasar responded thusly:

> Exhibit C is evidence that the Plaintiff returned trousers that he purchased from that store. He asserts that it is a disputed fact that they were in fact purchased from the Defendant Store. He was also given a store credit for this purchase

(D.E. 35 at PageID 145.) Thus, in neither response did Plaintiff dispute Kohl's assertion that he did not in fact present a purchase receipt at the time he made either return of clothing on September 4, 2017.[6]

---

[6]The Plaintiff acknowledged in his deposition that the copies of the Kohl's receipts were correct. (D.E. 27-2 at PageID 81-82.)

In its September 19, 2019, order striking Plaintiff's initial response from the docket, the Court quoted LR 56.1 and Fed. R. Civ. P. 56(e), the local and federal procedural rules relating to responses to motions for summary judgment, which set forth the requirements for such responses and provide that a responding party's failure to respond to a moving party's statement of undisputed facts permits the Court to consider the fact undisputed. (*See* D.E. 30.) Based on these rules, the Court finds it is undisputed that Plaintiff failed to present purchase receipts for his returns of items to the Kohl's store on September 4, 2017.

In SOUF 13 and 15, the Defendant averred as follows:

> 13. On September 9, 2017, Kohl's loss prevention personnel further investigated Plaintiff's return of the Haggar-tagged pants on September 4, 2017, at 8:06 PM. Loss prevention personnel determined that the sewn-in label of the pants was Perry Ellis. The Haggar brand tag was stapled to the pants.
>
> 15. On September 12, 2017, Plaintiff attempted to return a pair of pants with the tag from the Croft and Barrow pants he purchased on September 4, 2017, at 8:08 PM. The sewn-in label of the pants, however, did not match the Croft and Barrow tag. Kohl's refused to return the pants. Manager Paul Sanford spoke with Plaintiff during this attempted return.

(D.E. 27-1 at PageID 74.) In his responses to these statements of undisputed fact, Nasar made no response whatever to the Defendant's assertions relating to the discrepancies between the tags and sewn-in labels. Accordingly, those facts are also undisputed.

Based on the facts determined to be undisputed, the Court finds that Kohl's had probable cause to believe Plaintiff had engaged and/or was attempting to engage in theft by fraudulent return of merchandise. Therefore, Nasar's claim of false arrest and imprisonment must fail. *See supra Christian Bros. Univ.*, 428 S.W.3d at 54.

*CONCLUSION*

For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Defendant and remove all future settings in this matter from the Court calendar.

IT IS SO ORDERED this 15th day of November 2019.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE